UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| DONNIE R. JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV409-061 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Claimant Donnie R. Jenkins appeals the Social Security Administration's (SSA's) denial of his application for disability and supplemental security income benefits. Doc. 1. For the reasons set forth below, the Court should **AFFIRM** the SSA's decision.

## I. BACKGROUND

In May 2003, Jenkins applied for disability and disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning April 15, 1988. Tr. 32.[1] Following administrative

---

[1] The Court will reference the SSA's administrative record as "Tr." and the Court's

denial, he received a hearing before an Administrative Law Judge (ALJ), where he testified. *Id.* Consulting a Vocational Expert,[2] the ALJ found that Jenkins suffered from severe impairments (right knee replacement, surgical reconstruction of right ankle, Tr. 34) and medically determinable impairments (bipolar disorder, heart murmur, etc., *id.*) and thus could not perform any past relevant work as defined by SSA regulations. Nevertheless, he could perform a significant number of jobs existing in the national economy, so the ALJ denied the claims. Tr. 37-39. The SSA appeals council affirmed the ALJ's determination, Tr. 3-5, leading Jenkins to file this action for judicial review. Doc. 1.

## II. ANALYSIS

### A. Standard of Review

A multi-step process figures into the ALJ's decision. Summarized,

> [a] person who applies for Social Security disability benefits must prove [his] disability. *See* 20 C.F.R. § 404.1512. The Social Security Regulations outline a five-step sequential evaluation process for

---

own record as "doc." The administrative transcript itself is filed in the Court's record. Doc. 6. While the Court's online docketing system electronically imprints transient page numbering on each "screen page" of the transcript, the Court will cite to the transcript's preprinted, "hard copy" pagination.

[2] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004), quoted in *Waldrop v. Comm'r of Soc. Sec.*, 2010 WL 2017647 at * 4 (11th Cir. May 21, 2010).

> determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In steps one and two, the claimant must show that [he] has not engaged in substantial gainful activity; and [he] must prove a severe impairment or combination of impairments. *Jones*, 190 F.3d at 1228. In step three, the impairment is compared to listed impairments; if the impairment meets or equals a listed impairment, disability is automatically established. *Id*. If step three's impairment listing does not establish disability, in step four the claimant must show an inability to perform past relevant work. *Id*. If the claimant makes a sufficient showing of inability to perform past relevant work, in step five the Commissioner bears the burden of showing other available work that claimant is *able to perform*. *Id*.

*Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009) (footnote omitted; emphasis added). Whether one is "able to perform" other work requires a Residual Functional Capacity (RFC) assessment. That

> is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 1545(a), 416.945(a). As to physical abilities, the RFC assesses the claimant's ability to do things like sit, stand, walk, lift, carry, push or pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). As to mental abilities, the RFC assesses the claimant's ability to do things like understand, remember or carry out instructions or respond appropriately to supervision, co-workers or work pressures. 20 C.F.R. §§ 404.1545(c), 416.945(c). The ALJ's finding as to a claimant's RFC is based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do his past relevant work or any other work. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(5), 416.920(a)(4), 416.945(a)(5).

*Watson v. Astrue*, 2010 WL 1710827 at * 2 n. 5 (11th Cir. Apr. 28, 2010).

In that regard,

> there are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. First, the ALJ may apply the Medical Vocational Guidelines, commonly known as "the grids," found in 20 C.F.R. § 404, subpart P, appendix 2. Second, the ALJ may consult a vocational expert, or VE, by posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment.

*Id.*, 2010 WL 1710827 at * 2 (cites and alterations omitted).

This Court must affirm the ALJ's decision if his conclusions are supported by substantial evidence and proper application of the governing legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159.

Finally, the Court cannot substitute its own judgment for the Commissioner's. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). That is, it is

> the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir.1963).

*Lewis v. Astrue*, 2009 WL 464264 at * 2 (M.D. Fla. Feb. 24, 2009) (unpublished). That is why this Court cannot reweigh the evidence, but rather "is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled." *Id.* The Court need only "satisfy itself that the proper legal standards were applied and legal requirements were met." *Id.* (citing *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988)).

### B. The Evidence

The record shows that Jenkins was born on August 25, 1962, Tr. 52, and graduated from high school, Tr. 143, though he attended "low-ability" classes. Tr. 218. Past relevant work consisted of employment as a sewing machine mechanic, a saw operator at a sawmill, and a cloth-

dyeing machine operator. Tr. 341-43. He also worked in a bearing plant moving parts carts to and from workers. Tr. 345.

Jenkins drives a car once or twice a week and grocery shops with his wife, who manages the food stamps used for payment. Tr. 347. He tries to help out around the house, "you know, maybe washing the clothes once in a while or something. A lot of the time with my depression, not a whole lot." *Id.*[3] He has "done some of the cooking" but no housework. Tr. 348. He does "mow the grass occasionally." *Id.* And, he attends church twice a week. Tr. 348-49. He watches TV but has no hobbies. He only "occasionally walk[s] in the yard, that's basically it." Tr. 349-50.

At the 2006 hearing the ALJ asked Jenkins what Jenkins would need "cure" in order for him to go back to work. "Well, my leg is limiting (sic) physical work," Jenkins replied, Tr. 350, "[a]nd then my educational activity, as far as sitting down at a desk job or something like that type of work, I can read at about a first grade level." *Id.* He also has "depression," *id.,* but avoids painkillers for fear a reviving his

---

[3] Jenkins later testified that he sought medical care for depression in 1988, when he felt suicidal, has been diagnosed as suffering from "bipolar disorder" and that it runs in his family. Paxil helps him manage but does not eliminate it. Tr. 355.

alcoholism, which he overcame eight years earlier with the help of Paxil. Tr. 352.

Jenkins confirmed that he had a right knee replacement, surgery on his right ankle, and now, on an unrelenting basis, his "hip is starting to hurt." Tr. 351. Ligaments also pop in his knee. *Id.* Walking for "like 30 minutes or an hour standing on it" leads to eight-hour pain cycles, and "it's hard to go to sleep at night because of the throbbing." Tr. 352. He feels like he can stand not much more than two hours a day, but would "have to take breaks" to do that. Tr. 357. And, he can stand on his feet 30 minutes at a time, then sit down. *Id.* Except that his knee and hip then bother him if he sits for too long. *Id.* So, he can only sit for 30 minutes before having to stand up. *Id.*

Jenkins's attorney asked him,

Q. Is there anything else that you wanted to tell the Judge today that I haven't asked you about or he hasn't asked?

A. I just think my physical type of work I've been doing, I just don't feel like I can do it. I don't feel like I got the educational ability and with my depression, I just don't feel like I could deal with the public, even say at a gas station where I have to stand, I don't even know if I could learn how to run a cash register and if I could, I don't think I could deal with people. That's it.

Tr. 358.

On further (ALJ) questioning, Jenkins specified that he is "just not a people person," has trouble with "[c]rowds of people," and gets "nervous" at the sub-crowd level. Tr. 358. His wife testified that when she arrives home from her job at 2:00 p.m. each day, he is "usually on the couch or he's in bed, just sad." Tr. 360. "He just like he's mainly depressed all the time. He hardly ever laughs, hardly smiles." *Id.* At church Jenkins interacts with others only if they start the conversation first. Tr. 361. When he accompanies her to the grocery store he will, after walking around for a few minutes "start complaining that his leg hurts him real bad." *Id.* He interacts on a basic level with store clerks and customers. Tr. 362.

### C. The ALJ's Determination

The ALJ found that Jenkins satisfied step four -- he is unable to perform any past relevant work. Tr. 37-38; *see also* Tr. 368. Thus, the burden shifted to the SSA (Step Five above) to show that Jenkins could perform existing jobs in the national economy. Concluding that it met that burden, the ALJ cited evidence of other work that the plaintiff could perform given his age, education, prior work experience, and residual functional capacity. That evidence came from a hypothetically

questioned (based on Jenkins's physical and mental limitations) Vocational Expert (VE). Tr. 367-68. The VE opined that Jenkins could, despite his physical and mental limitations, work as a ticket seller, ticket taker, and parking lot attendant. Tr. 368-69. But on cross-examination the VE conceded that if Jenkins was incapable of even occasional interaction with the public, co-workers, or supervisors, then he could not perform even those jobs. Tr. 370. The ALJ found that Jenkins

> has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; he requires a sit or stand option with no more than two hours of standing or walking per day and no standing or walking for more than 30 minute periods; he can occasionally climb ramps or stairs, crawl, kneel, crouch and stoop; he can never climb ladders, ropes or scaffolds; be is unable to work in jobs that require extensive reading or allow him ready access to alcoholic beverages; and he had mild pain. This finding adopts the views of claimant's treating orthopedist, Dr. Palmer . . . as well as the view of the State Agency reviewing physician. . . .

Tr. 36.

The ALJ also rejected the VE's no-jobs concession, because other evidence ("he went shopping, and ... he attended church twice per week") showed that Jenkins could make "a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 39. Hence, he is not disabled. *Id.*

### D. Substantial Evidence Review

Jenkins argues that the ALJ erred in failing to properly assess his residual functional capacity, particularly by failing to adequately assess the combined effects of multiple impairments and by rejecting the opinions of treating physicians. The ALJ also erred in failing to find plaintiff fully credible. These combined errors mean that the SSA failed meet its "Step Five" burden, so this Court must reverse and direct an award, if not remand for further findings. Doc. 10; doc. 12 at 1, 3-4.

Again, this Court's review is limited to ascertaining whether substantial evidence supports the ALJ's conclusion. So long as the ALJ's ruling rests on such relevant evidence as a reasonable person would accept as adequate to support a conclusion, then the Court must affirm even if the evidence preponderates against the ALJ's findings. *See* Part II(A) ("Standard of Review") *supra.*

All of Jenkins's arguments rest on the same inherent flaw -- he simply disagrees with the degree and extent to which the ALJ weighed the evidence. Hence, Jenkins simply slips in the adjectives "full" and

"properly" before each layer of the ALJ's evidence consideration. This resonates in every one of his arguments. E.g.:

> First, the above assessment fails to *properly* consider the combined impact of all severe impairments suffered by Plaintiff. Both the Commissioner's regulations, 20 C.F.R. 404.1523 and 416.923, and 11th Circuit law mandate *full* consideration of combined impairments in determining whether an individual is disabled. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). The Commissioner could not have *properly* considered the impact of Plaintiff's combined impairments since he did not assess multiple impairments as severe.

Doc. 10 at 17 (emphasis added).

Meaningful argument would detail *how* a quantum of evidence was not *properly* considered. Jenkins' arguments do not. Boiled down, then, he simply does not like the way the factfinder weighed the evidence. More is required—such as a claim that the ALJ *missed* an entire layer of evidence, or applied the wrong legal standard to it. *See, e.g., Watson,* 2010 WL 1710827 (a similar case, where the claimant unsuccessfully argued on appeal that his ALJ erred by relying on a VE instead of SSA "grids," which are published Medical Vocational Guidelines found in 20 C.F.R. § 404, subpart P, appendix).

On this particular point, for that matter, the ALJ did his job -- he expressly noted that Jenkins suffered from severe impairments.

11

Tr. 34 ("The claimant has the following severe impairments: status post replacement of the right knee and surgical reconstruction of the right ankle. . . ."). He also noted claimant's medically determinable impairments (bipolar disorder, etc., *id.*), and engaged in an extensive analysis of each medical impairment, Tr. 34-35, before concluding that Jenkins could overcome them to perform the VE-identified jobs. Tr. 36-39.

The remainder of Jenkins's arguments are little different. Example:

> The ALJ assessed Plaintiff as suffering severe impairments in the form of status post right knee replacement and surgical right ankle reconstruction (TR 34; Finding 3). This recitation fails to include additional disorders: multiple gastrointestinal impairments, hypertension with cardiac defects, bipolar disorder, and learning disability with attention deficit disorder.

Doc. 10 at 17. In fact, the ALJ did consider these and other factors. He broke them out into physical and mental impairment categories and then explained why he rejected them. On the physical ailment evidence:

> The claimant's medically determinable impairments of bipolar disorder, depressive disorder, a heart murmur, duodenitis, gastritis, a hiatal hernia, and gastroesophageal reflux are not severe as they do not significantly limit the claimant's physical or mental ability to perform basic work activities.

On November 22, 2005, the claimant underwent an esophagogastroduodenoscopy (EGD). Following the procedure, Dr. John Odom stated that the claimant had severe duodenitis, gastritis, a hiatal hernia, and gastroesophageal reflux . . . . However, there is no further mention of these problems in the medical evidence of record and they are thus found to be nondurational (i.e., not lasting at least a full year).[4]

A lower extremity arterial Doppler study performed on November 23, 2005 was normal. A stress imaging study performed on March 2, 2006 was electrically abnormal, but nondiagriostic for ischemia. An electrocardiogram was normal as well. A myocardial perfusion scan performed on March 3, 2006 was normal. . . .

Tr. 34-35 (footnote added).

The ALJ also considered Jenkins's mental health evidence in detail:

The medical evidence indicates that the claimant's mental impairments result in [only] mild restrictions in daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, and pace. There is no evidence that the claimant experiences episodes of decompensation in work-like settings of extended duration.

In making this determination, the undersigned [gave] great weight to the medical opinions of Dr. Robert T. Coyle, a state agency psychological examiner, stated on August 29, 2003 that the claimant's impairment of depressive disorder was not severe. He said that the claimant had only mild restrictions in daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration persistence, and pace. He stated that

---

[4] "Disability is the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.' 42 U.S.C. § 423(d)(1)(A)." *Pettaway v. Astrue*, 2010 WL 1645981 at * 1 (11th Cir. Apr. 26, 2010).

the claimant had not experienced any episodes of decompensation in work-like settings of extended duration . . . .

Tr. 35.[5]

Here Jenkins merely picks at the edges. Example: "The ALJ acknowledged multiple gastrointestinal disorders, but concluded the impairments failed to satisfy the 12-month durational requirements of the Social Security Act (TR 34) To the contrary, the record indicates Plaintiff suffered gastrointestinal symptoms for several years (TR 184, 265) and the AL[J]'s conclusion that Plaintiff did not satisfy durational requirements is not supported by the record." Doc. 10 at 17-18. To make this assertion, however, Jenkins cites to 1991 ("Antral Gastritis with Bulbar Duodenitis") and 2005 ("generalized moderate gastritis") medical records, and simply infers that the condition spanned that entire time. But the 2005 record cites "severe dyspepsia, heartburn and reflux

---

[5] Other record evidence supports this finding. In July 2004, Dr. Douglas Marira, a physician who reviewed Jenkins's medical records for the state agency, concluded Jenkins's complaints "of pain and difficulty with prolonged standing are partially credible. The cl[aimant] is likely to experience episodic discomfort due [to his] condition." Tr. 221-228, 226. The ALJ cited his findings that Jenkins could do things like lift and carry twenty pounds occasionally and ten pounds frequently, and could stand and walk for two hours of an eight hour workday, and sit for six. Tr. 37. The ALJ also cited the July 2005, report of Dr. Morgan, one of plaintiff's treating physicians, who noted that although Jenkins complained of hip and knee pain, he had no difficulties with ambulation (despite a slight limp) and had "only minimal" work restrictions. Tr. 37, 271.

for several years," Tr. 265, not for nearly a decade and a half. True, that condition spanned more than 12 months, but it is also beside the point because Jenkins's own hearing testimony supplied the substantial evidence needed to support the ALJ's finding -- that he was able to sufficiently sit, walk, drive and interact with others (the grocery shopping and church-going evidence), such that the *combined* medical impairments "do not significantly limit the claimant's physical or mental ability to perform basic work activities." Tr. 34.

The remainder of Jenkins's arguments similarly pick at, but fail to pierce,[6] the core of this case: The ALJ determined that Jenkins was capable of performing the VE-identified jobs by comparing his residual functional capacity to the physical and mental demands posed by such jobs, and substantial evidence supports this result. This Court's review

---

[6] Example: "The record identified by the Commissioner (Tr. 271) does indicate Plaintiff was having no difficulty ambulating. However, that same note indicated Plaintiff was walking with a slight limp, an observation inherently contradictory to the conclusion that Plaintiff was not having difficulty ambulating." Doc. 12 at 2. Jenkins advances this argument in an obvious attempt to show that the ALJ's conclusion is supported by only contradictory, not substantial evidence.

In fact, there is nothing contradictory about Dr. Morgan's notation, which reflects the fact that Jenkins contacted him "needing forms filled out for disability services." Tr. 271. Morgan noted Jenkins's corrective surgery and concluded: "Basically little could be added to the prior note [that Morgan had evidently given to Jenkins] noting that he does walk with a *slight* limp but seems to have *no* difficulty with ambulation or getting about. Forms are appropriately completed with only *minimal* of restrictions recommended." *Id.* (emphasis added).

15

ends there. *See, e.g., Waldrop*, 2010 WL 2017647 at * 4. Thus, the Commissioner should be affirmed and this case should be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this 7th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA